UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
GODFREY DAVIS, :
:
                          Plaintiff, :
:       23-CV-6163 (VSB)
       - against - :
:       **OPINION & ORDER**
:
WESTLAKE SERVICES, LLC, *et al.*, :
:
                     Defendants. :
:
------------------------------------------------------------X

Appearances:

Novlette R. Kidd
Kidd Law Group PLLC
New York, NY
*Counsel for Plaintiff*

Jeremy M. Iandolo
J. Iandolo Law, PC
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       On July 17, 2023, Plaintiff Godfrey Davis ("Plaintiff" or "Davis") filed this action against Defendants Westlake Services, LLC ("Westlake"), Americarna Auto Sales LLC ("Americarna" or the "Dealership"), and Barclay Close ("Close") (collectively, "Defendants"), alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the New York Motor Vehicle Retail Instalment Sales Act, N.Y.P.P.L. § 301 et seq. ("MVRISA"), the New York General Business Law § 349 ("GBL"), and for common law fraud. Currently before me is Defendants' motion to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I find that there is no subject-matter

jurisdiction, Plaintiff's Amended Complaint is DISMISSED, and Defendants' motion to dismiss is DENIED as moot.

I.      **Factual Background**[1]

On July 16, 2022, Plaintiff Godfrey Davis visited a used-car dealership, Americarna ("Dealership") after viewing an online advertisement for a used 2011 Infiniti M37 (the "Vehicle") with a sales price of $13,995.  (Doc. 9 ("Am. Compl.") ¶¶ 59–64.)  A salesman at the Dealership, who identified himself as Omar Todman, showed Plaintiff the Vehicle bearing a sticker price of $16,995.  (*Id.* ¶¶ 65–75.)  When Plaintiff told Omar that the online advertisement price was $13,995, and that he would only be willing to pay that price, Omar said "okay".  (*Id.* ¶¶ 78–79.)  After Plaintiff told Omar that he wished to purchase the Vehicle, Plaintiff was shown to the office of the finance manager, Jay.  (*Id.* ¶¶ 80–91.)  Jay agreed to sell Plaintiff the Vehicle for $13,995 plus tax and customary fees and charges.  (*Id.* ¶ 93.)  Plaintiff made a deposit of $3,600 and was provided a receipt, intending to finance the remaining payment.  (*Id.* ¶¶ 94–97, 227.)

Without his consent or approval, Jay affixed Plaintiff's digital signature to a Retail Installment Contract ("RIC"), which Americarna subsequently assigned to Westlake.  (*Id.* ¶¶ 56, 105–116.)  Plaintiff was not given a paper copy of the RIC at the time of signing.  (*Id.* ¶¶ 118, 155.)  "At a certain point after plaintiff's purchase of the Vehicle," Plaintiff reviewed a Buyer's Order prepared by Westlake and noticed a charge of $1,500 which he had not seen when he purchased the Vehicle.  (*Id.* ¶¶ 120–130.)  When Plaintiff called Americarna and asked Jay what the $1,500 charge was that was included in Plaintiffs loan, Jay told him it was Jay's profit

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint (*see* Doc. 9 ("Amended Complaint" or "Am. Compl.")), which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

2

because of the financing, and that the Dealership would not refund the amount to Plaintiff. (*Id.* ¶¶ 134–139.) After Plaintiff obtained the RIC, he saw a $1,500 charge for "Anti-Theft." (*Id.* ¶¶ 173–175.) Americarna inserted the $1,500 charge into his purchase of the Vehicle and attached his signature to the RIC without Plaintiff's knowledge or consent. (*Id.* ¶¶ 176–179.) Plaintiff only obtained certain documents—including an insurance policy on which his signature was also forged—after the commencement of this litigation. (*Id.* ¶¶ 186–207.)

## II.   Procedural History

Plaintiff filed this action on July 17, 2023. (Doc. 1.) Defendants moved to dismiss on September 29, 2023. (Doc. 6.) After seeking and obtaining an extension to file an amended complaint, (Docs. 7, 8), Plaintiff filed the Amended Complaint on October 13, 2023, (Doc 9). Defendants again filed a motion to dismiss for failure to state a claim on November 8, 2023. Doc. 21.) Plaintiff filed his opposition on November 28, 2023, (Doc. 22), and Defendants did not file a reply.

## III.   Legal Standard

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256, (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and may not preside over cases absent subject-matter jurisdiction, *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 83 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases."). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-matter jurisdiction as the

3

"threshold question") (internal quotation marks omitted). Even where "[ ] neither party has raised a question as to this Court's jurisdiction . . . 'it is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *Sanders v. New World Design Build, Inc.*, 19-CV-1071, 2020 WL 1957371, at *1 n.2 (S.D.N.Y. Apr. 23, 2020) (quoting *United Food & Com. Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3). "[W]ithout jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016).

### IV. Discussion

#### A. *The TILA Claims*

The purpose of the TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The TILA "reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 377 (1973). The TILA imposes civil liability on "any creditor who fails to comply with any requirement imposed under [the portion of TILA dealing with credit transactions]." 15 U.S.C. § 1640(a). Therefore, the TILA is a "remedial [A]ct intended to protect consumers . . . and, as such, its provisions are to be construed liberally in favor of consumers." *Belmont v. Assocs. Nat'l. Bank (Del.)*, 119 F. Supp. 2d 149, 159 (E.D.N.Y. 2000) (internal citations omitted).

In enacting the TILA, Congress delegated authority to the Federal Reserve Board to promulgate regulations designed to further the provisions of the TILA. *See Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016). Pursuant to this power, the Board promulgated Regulation Z to implement the TILA. 12 C.F.R. §§ 226.1(a)–226.59. Under Regulation Z, a creditor is required to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z requires creditors to make sure disclosures prior to the "consummation of the transaction." *Maas v. Spencer Leasing Corp.*, No. 12-CV-2951, 2013 WL 5308859, at *9 (E.D.N.Y. Sept. 18, 2013) (adopting report and recommendation) (quoting 15 U.S.C. § 1638). Consummation is defined under Regulation Z as "the time that a consumer becomes contractually obligated on a credit transaction." *Smith v. Wells Fargo Bank, N.A.*, 666 F. App'x 84, 86 (2d Cir. 2016) (internal quotation marks omitted). The TILA does not define when a consumer becomes contractually bound, but rather relies on state law to determine when the obligation arises. *See* 12 C.F.R. § 226.2(b)(3); *see also Smith*, 666 F. App'x at 86.

### B. *No Valid Contract Exists Between the Parties*

As an initial matter, Plaintiff claims that subject-matter jurisdiction exists because he raises questions of federal law under the TILA, (Am. Compl. ¶ 13 (citing 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331)), and because I should exercise supplemental jurisdiction over his remaining state-law claims because they arise out of the same set of facts, (*id* (citing 28 U.S.C. § 1367)). Plaintiff further alleges that Americarna is a "creditor" within the meaning of 15 U.S.C. § 1602(g) and 12 C.F.R. § 226.2(a)(17). Defendants do not dispute the existence of subject-matter jurisdiction, nor do they challenge Plaintiff's assertion that Americarna was the original creditor obligated to make the disclosures required by TILA, despite having assigned its

5

interest in the loan, through the RIC, to Westlake.  Thus, under § 1638(b), Americarna had a duty to provide Plaintiff with the required TILA disclosures, in writing, prior to the consummation of the credit transaction.  *See* 12 C.F.R. § 226.17(a)(1).  Here, consummation occurred when the loan instrument—the RIC—was executed, which is the only contract ostensibly at issue.  Plaintiff alleges, however, that this document was "also the only document containing TILA disclosures," that an employee of Americarna essentially forged Plaintiff's electronic signature on the document, and that the first time he saw the RIC—and thus the TILA disclosures—was when Plaintiff received the RIC from Westlake nearly a year after the sale.  (Doc. 22 at 12; *see also* Am. Compl. ¶¶ 176–181.)

Neither party addresses whether under New York law, which governs here, Plaintiff's allegation that he never signed the RIC would render that contract void.  However, whether the parties entered into a valid contract is a threshold matter I must address; otherwise, Plaintiff would not have a valid TILA claim, and I would accordingly lack subject-matter jurisdiction over this case.  *See Islam v. Lee's Motors, Inc.*, No. 17-CV-03955, 2018 WL 4771884, at *3 (E.D.N.Y. Sept. 30, 2018) ("TILA and Regulation Z, 12 C.F.R. § 226.18, presuppose a valid contract between a creditor and consumer to trigger a creditor's disclosure obligations."); *Orlosky v. Empire Sec. Sys., Inc.*, 230 A.D.2d 401, 403 (3d Dep't 1997) (noting that "[s]ignificantly, a valid contract is a prerequisite to invocation of TILA protections" (citing *Fairley v. Turan–Foley Imports*, 65 F.3d 475, 480 (5th Cir. 1995); *Jensen v. Ray Kim Ford, Inc.*, 920 F.2d 3, 4 (7th Cir. 1990))).

Under New York state and general contract law, "a forged signature renders a contract void *ab initio*."  *See id*. (citations omitted).  Thus, because Plaintiff alleges that he did not sign the RIC and that his signature was forged, the RIC was not a valid contract between the parties

and therefore cannot form the basis for TILA protection. *See id*. Neither party addresses the validity of the underlying contract, and Plaintiff does not allege that any other contract exists such that the provisions of the TILA are implicated. Although Plaintiff appears to allege that he entered into an oral contract with employees of Americarna (Jay and Omar) to purchase the Vehicle for the price it was advertised for ($13,995 (plus sales tax and customary fees and charges)), he does not allege that this oral contract is a sufficient basis for his TILA claims. (*See* Am. Compl. ¶¶ 70, 92, 93, 265.) Nor does Plaintiff allege facts in the Amended Complaint which would support an argument that a contract exists between the parties despite Plaintiff's forgery allegation. *Cf. Fairley*, 65 F.3d at 481. Thus, although New York law also dictates that courts evaluating whether parties entered into a contract should look at the "objective manifestations of the intent of the parties as gathered by their expressed words and deeds," the Amended Complaint, on its face, fails to properly plead the existence of a valid contract. *Minelli Const. Co. v. Volmar Const., Inc.*, 82 A.D.3d 720, 721 (2d Dep't 2011).[2] Therefore, because Plaintiff has not alleged the existence of a valid contract, he is not entitled to the TILA's protections, and I therefore lack subject-matter jurisdiction over his TILA claims.[3] Accordingly, Plaintiff's TILA claims are dismissed without prejudice.

---

[2] Defendants attached five documents to the motion to dismiss. (*See* Docs. 21-1–21-5.) I can consider the RIC (Ex. B), Theft Deterrent Product Production form (Ex. C), and the Buyer's Order (Ex. D), (Docs. 21-2–21-4), because they are also attached to the Amended Complaint, (Docs. 9-7 (RIC), 9-8 (Theft Deterrent Product Production form), 9-6 (Buyer's Order)). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] court may consider documents attached to the complaint as an exhibit." (internal quotation marks omitted)). However, I cannot consider the other attachments in the context of a motion to dismiss. *PB Ams. Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 253 (S.D.N.Y. 2010) ("It is generally true that when material outside a complaint is attached to a defendant's motion to dismiss and considered by the court, the motion is converted from motion to dismiss to one for summary judgment." (citation omitted)). Defendants will have an opportunity to make arguments based on other documents at a later stage of this litigation if they choose to do so.

[3] Independently, Plaintiff's TILA claims are dismissed under Rule 12(b)(6) for failure to state a claim. *See Islam*, 2018 WL 4771884, at *3 (dismissing TILA claim under Rule 12(b)(6) because "no valid contractual relationship relevant to this litigation existed between" plaintiff and defendants); *see id.*, at *4 (collecting cases dismissing TILA claim due to void contract).

### C.     *State-Law Claims*

Having dismissed Plaintiff's sole federal claim, I now consider how to proceed with Plaintiff's state-law claims.  Although the Court may exercise supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a), "when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (citing 28 U.S.C. § 1447(c)); *cf. Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305-06 (2d Cir. 2003) (explaining that district courts may, in their discretion, retain supplemental jurisdiction over state-law claims when all federal claims are dismissed for failure to state a claim pursuant to Rule 12(b)(6)).[4]  Therefore, because I lack subject-matter jurisdiction over Plaintiff's TILA claims, I also lack supplemental jurisdiction over his related state-law claims.  Accordingly, Plaintiff's state-law claims are dismissed without prejudice.

### V.     **Conclusion**

For the reasons set forth above, Plaintiff's Amended Complaint is DISMISSED without prejudice and with leave to replead.  Defendants' motion to dismiss is DENIED as moot.

Plaintiff has thirty days to file a Second Amended Complaint that properly asserts subject-matter jurisdiction.  If Plaintiff fails to file a Second Amended Complaint by February

---

[4] The state-law claims are dismissed even if the TILA claims were dismissed for failure to state a claim.  When the federal claims are dismissed under Rule 12(b)(6), I have discretion to retain supplemental jurisdiction over state-law claims.  *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305-06 (2d Cir. 2003).  Here, I would have declined to retain supplemental jurisdiction and, therefore, Plaintiff's state-law claims would be dismissed even if the TILA claims were dismissed under Rule 12(b)(6).  *See, e.g.*, *Miller v. Eur. Am. Bank*, 921 F. Supp. 1162, 1168 (S.D.N.Y. 1996) ("For the reasons set forth above, the TILA claim is dismissed for failure to state a claim on which relief can be granted, and the remaining claims are dismissed for lack of subject matter jurisdiction.").

17, 2025, the Clerk of Court is directed to terminate this action. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 21.

SO ORDERED.

Dated: January 16, 2025
      New York, New York

Vernon S. Broderick
United States District Judge